UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TOWN OF WESTPORT and<br>WESTPORT COMMUNITY SCHOOLS,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY, SOLUTIA, INC.<br>and PHARMACIA CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 14-12041-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**  March 24, 2015

**I.  Introduction**

Plaintiffs Town of Westport and Westport Community Schools ("Westport") have filed this lawsuit against Defendants Monsanto Company, Solutia, Inc. and Pharmacia Corporation, ("Defendants") alleging breach of implied warranty of merchantability by defective design (Count I), breach of implied warranty of merchantability by failure to warn (Count II), negligence (Count III), public nuisance (Count IV), private nuisance (Count V), trespass (Count VI) and violation of the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. L. c. 21E §§ 5(a)(3)-(5) (Count VII). D. 1. Defendants have moved to dismiss the public nuisance, private nuisance, trespass and Chapter 21E claims. D. 22. For the reasons stated below, the Court ALLOWS Defendants' partial motion to dismiss.

1

## II.     Standard of Review

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court determines whether the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). A complaint must include facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (footnote omitted). This determination requires a two-step inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court distinguishes between factual and conclusory legal allegations in the complaint. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Then, taking the Plaintiff's factual allegations as true, the Court must draw "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). "[N]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting Ocasio-Hernández, 640 F.3d at 14-15 (1st Cir. 2011)). "In determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense . . . . This context-specific inquiry does not demand a high degree of factual specificity." García-Catalán, 734 F.3d at 103 (citations and internal quotation marks omitted).

## III.    Factual Background

This summary is drawn from the factual allegations in the complaint, D. 1, that for the purposes of this motion, are assumed to be true. Westport, which operates public schools and buildings in Westport, Massachusetts, has detected toxic chemical compounds known as

polychlorinated biphenyls ("PCBs") in one or more of its facilities. D. 1 ¶ 1. Defendant companies are corporate spin-offs of Old Monsanto, the sole manufacturer of PCBs in the United States from 1935 to 1979. Id. ¶¶ 12-13, 21. Old Monsanto manufactured and distributed PCBs for use in many industrial and commercial contexts before Congress enacted the Toxic Substances Control Act ("TSCA") in 1979, which banned their manufacture and most uses. Id. ¶¶ 2, 4, 21-22, 55.

During the period before Congress enacted the TSCA, Old Monsanto produced PCBs for use in both "totally enclosed" materials such as transformers and lighting ballasts, as well as "non-totally enclosed" materials such as caulks, paints and sealants. Id. ¶¶ 21-25. Old Monsanto became aware of PCB's toxicity as early as the 1930s. Id. ¶ 42. Exposure to PCBs is associated with cancer and can effect a person's immune system, reproductive system, nervous system and endocrine system. Id. ¶¶ 3, 35. Young children may be more affected by PCBs than adults. Id. ¶ 41. PCBs can be ingested, inhaled, and absorbed through skin. Id. ¶ 31. PCBs can escape into the atmosphere during production and also through intended uses of products containing PCBs. Id. ¶ 4.

In May 2011, Westport detected PCBs in one or more of its schools that were built or renovated between 1950 and 1978. Id. ¶ 60. In May 2011, it detected dangerous levels of PCBs at the Westport Middle School. Id. In December 2013, the Environmental Protection Agency issued a press release warning that PCB-containing light ballasts installed prior to the ban on PCBs may still be in schools and may leak PCBs. Id. ¶ 57.

**IV. Procedural History**

3

Plaintiffs instituted this action on May 7, 2014. D. 1. Defendants have now moved to dismiss Counts IV through VII. D. 22. The Court heard the parties on the pending motion and took this matter under advisement. D. 39.

## V.     Discussion

### A.     Public Nuisance (Count IV)

In Massachusetts, "[a] nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury." Connerty v. Metro. Dist. Comm'n, 398 Mass. 140, 148 (1986), abrogated on other grounds by Jean W. v. Commonwealth, 414 Mass. 496 (1993). "Public nuisance liability can be based upon conduct that is intentional, and unreasonable or negligent, reckless or ultrahazardous." Connerty, 398 Mass. at 149 (citation omitted). Ordinarily, only the Attorney General may bring an action for public nuisance, but a private plaintiff may do so if she can "'show that the public nuisance has caused some special injury of a direct and substantial character other than that which the general public shares.'" Sullivan v. Chief Justice for Admin & Mgmt. of Trial Court, 448 Mass. 15, 34-36 (2006) (quoting Connerty, 398 Mass. at 148) (dismissing public nuisance claim based on failure to protect courthouse workers from asbestos dislodged during building renovations when workers failed to allege a special injury distinct from the injury faced by others in the courthouse). To determine whether there has been an interference with a public right, a court considers "[w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." Id. at 34. A town may bring a public nuisance action when it could be held liable for harm occurring as a result of the nuisance, which the Court assumes without deciding is the case here for the purposes of this motion. See Town of Dartmouth v. Silva, 325 Mass 401, 404 (1950) (providing, "where the

interference with a public right of way is of such a nature that a town may be put to expense in repairing the way, or may be liable for damage sustained from its obstruction, it has been held that such a suit may be maintained by the town").

The complaint alleges Defendants were the sole manufacturer in the United States producing PCBs for commercial use between 1935 and 1979. D. 1 ¶ 21. Defendants contend this is insufficient to establish their liability under a public nuisance theory because they lacked control over the instrumentality of the nuisance. D. 33 at 2-7. Westport urges reliance on City of Boston v. Smith & Wesson Corp., No. 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000), in which a Massachusetts trial court refused to dismiss a public nuisance claim against a gun manufacturer because the manufacturer "intentionally and negligently created and maintained an illegal, secondary firearms market" which constituted the necessary instrumentality over the nuisance to maintain liability. Id. at *14. The court noted that "[t]o exercise control to abate the alleged nuisance, Defendants would have to cease maintaining the illegal, secondary market." Id. at *14 n. 62. By concluding that the illegal secondary market created the harm, including significant interference with public safety, health and peace, the court found the necessary instrumentality to maintain a public nuisance action at the stage of a motion to dismiss. Id.

City of Boston is unexamined by Massachusetts higher courts. Even considering its persuasive weight, this case is distinguishable based on the alleged instrumentality: in City of Boston the defendant created and supplied an illegal secondary market in weapons. Id. at *14; see Ileto v. Glock Inc., 349 F.3d 1191, 1214 (9th Cir. 2003) (reversing dismissal of public nuisance suit against gun manufacturer because, under California law, "the nuisance claim rests on the defendants' actions in creating an illegal secondary market for guns by purposefully over-

saturating the legal gun market in order to take advantage of re-sales to distributors that they know or should know will in turn sell to illegal buyers"); City of Cincinnati v. Baretta U.S.A. Corp., 768 N.E.2d 1136, 1142 (Ohio 2002) (allowing public nuisance claim to proceed because the "complaint alleged that appellees created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market" and thus that the manufacturers "control[led] the creation and supply of this illegal, secondary market for firearms, not the actual use of the firearms that cause injury"); Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp., 273 F.3d 536, 540 (3d Cir. 2001) (rejecting public nuisance claim against gun manufacturer and noting that "if public nuisance law were permitted to encompass product liability, nuisance law "would become a monster that would devour in one gulp the entire law of tort" and noting "[i]t is not the role of a federal court to expand or narrow state law in ways not foreshadowed by state precedent") (citation omitted).

Courts have largely rejected nuisance theory in the lead paint and asbestos contexts, which the Court finds more analogous to the instant case. See In re Lead Paint Litig., 924 A.2d 484, 505 (2007). In Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co., 984 F.2d 915, 920 (8th Cir. 1993), the Eighth Circuit did not differentiate between private and public nuisance but explained "[o]ne issue on which the courts appear to agree, however, is that nuisance law does not afford a remedy against the manufacturer of an asbestos-containing product to an owner whose building has been contaminated by asbestos following the installation of that product in the building." Tioga Pub. Sch. Dist. No. 15, 984 F.2d at 920; see City of Manchester v. Nat'l Gypsum Co., 637 F. Supp. 646, 656 (D.R.I. 1986) (dismissing nuisance claim against asbestos manufacturer because "[t]he instrumentality which created the nuisance, in this case, has been in the possession and control of the plaintiff, the City of Manchester, since the time it purchased the

6

products containing asbestos materials. The defendants, after the time of manufacture and sale, no longer had the power to abate the nuisance"). In City of Bloomington, Ind. v. Westinghouse Elec. Corp., 891 F.2d 611, 614 (7th Cir. 1989), the Seventh Circuit upheld a dismissal of both public and private nuisance claims against Monsanto. City of Bloomington, 891 F.2d at 614. The plaintiff in that case bought PCBs for use in manufacturing and later found the chemical in its sewers. Id. at 613-614. The court determined the plaintiff was "solely responsible for the nuisance it created by not safely disposing of the product" post-sale and that therefore "the allegations do not support the proposition that Monsanto participated in carrying on the nuisance." Id. at 614 (citation omitted).

Where there is no secondary market akin to that in City of Boston, the Court finds the case more analogous to City of Manchester, in which the court determined the defendants, post-sale, "no longer had the power to abate the nuisance." City of Manchester, 637 F. Supp. at 656. In City of Boston the court explicitly noted that "[t]o exercise control to abate the alleged nuisance, Defendants would have to cease maintaining the illegal, secondary market." City of Boston, 2000 WL 1473568, at *14 n. 62. Defendants do not have an analogous ability here. As in City of Bloomington, Westport was in control of the instrumentality, the PCB-containing products, following purchase and the Court thus agrees with Defendants that because they "did not have the power or authority to maintain or abate these PCB-containing building materials, they cannot be liable for a public nuisance." D. 23 at 7.

Accordingly, Defendants' motion to dismiss Westport's public nuisance claim, Count IV, is ALLOWED.[1]

---

[1] Westport does not oppose the dismissal of its private nuisance claim. D. 30 at 7 n. 1. Therefore, the Court ALLOWS Defendants' motion as to the private nuisance claim, Count V.

B.     **Trespass (Count VI)**

As to this claim, Westport proceeds on a theory of negligent trespass. D. 40 at 17. Under Massachusetts law, a claim for negligent trespass need not allege an intentional act. Shapiro v. City of Worcester, 464 Mass. 261, 265 n. 4 (2013) (citing DeSanctis v. Lynn Water & Sewer Comm'n, 423 Mass. 112, 118 (1996)) (noting in dicta that the trial judge "correctly recognized that negligent trespass does not require a showing of intentionality"). Rather, Westport must allege "that the defendant was negligent and that the defendant's negligent entry onto the plaintiff's land caused the plaintiff harm." DeSanctis, 423 Mass. at 118. Entry onto the plaintiff's land need not be made by physical entry of a person. Fed. Ins. Co. v. Boston Water & Sewer Comm'n, 583 F. Supp. 2d 225, 230 (D. Mass. 2008) (refusing to dismiss intentional trespass claim when plaintiff alleged "an unlawful entry of electromagnetic fields that resulted in physical damage to the pipes of its insured"); Sheppard Envelope Co. v. Arcade Malleable Iron Co., 335 Mass. 180, 187 (1956) (providing emission of cinders emanating from defendant's chimney "thirty to forty feet" away could constitute continuing trespass); Smith v. New England Aircraft Co., Inc., 270 Mass. 511, 530-31 (1930) (providing that take-offs and landings at very low altitudes could constitute trespass).

Here, the entry occurred as a result of Westport's purchase of products containing PCBs manufactured by the Defendants. Westport alleges "Monsanto negligently, recklessly, and/or intentionally produced and marketed PCBs in a manner that caused PCBs to contaminate Plaintiffs' property." D. 1 ¶ 103. Defendants urge the Court to dismiss because the "'entry' of PCBs onto Westport's property occurred independent of Pharmacia's purported negligent manufacturing activities and through Westport's own actions." D. 33 at 8.

8

Courts have dismissed claims of intentional trespass against manufacturers on the basis of a lack of control post-sale. See City of Bloomington, 891 F.2d at 615 (dismissing intentional trespass claim because "[i]n accordance with the Restatement principles, courts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers"); City of Manchester, 637 F. Supp. at 656 (dismissing trespass claim against asbestos manufacturer "because the plaintiff was the one placing the asbestos products in the schools and other public buildings"); Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F. Supp. 126, 133 (D.N.H. 1984) (dismissing trespass claim against asbestos manufacturer because "[d]efendants['] ownership and control of the asbestos products ceased at the time of sale" and "[p]laintiff's claims are more adapted to contract law or strict liability").

However, because a claim of negligent trespass need not include an intentional act, Westport analogizes its claim to Am. Glue & Resin, Inc. v. Air Prod. & Chem., Inc., 835 F. Supp. 36 (D. Mass. 1993), in which a court in this district refused to dismiss a claim for negligent trespass when the "complaint reasonably infer[red] that [the defendants] had a license to enter American's property to complete the sale and delivery of chemicals," and "that as a result of defendants' failure to use due care in handling the hazardous materials, Defendants allowed the release and spillage of chemicals" during delivery. Id. at 48. But unlike in Am. Glue & Resin, here, the Defendants manufactured and sold chemicals, presumably to third parties who incorporated the chemicals into materials and then sold them to Westport. It is not alleged that the Defendants entered Westport's property except insofar as Westport purchased products containing the chemicals. In In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig., 379 F. Supp. 2d 348, 412 (S.D.N.Y. 2005), a district court allowed a Massachusetts negligent trespass claim to proceed against a gasoline manufacturer where the plaintiffs had

9

alleged that the defendants set in motion "a force which in the usual course of events will damage the land of another." Id. at 412 (citing United Elec. Light Co. v. Deliso Const. Co., 315 Mass. 313, 319 (1943)). However, even in that case, the plaintiffs alleged that the defendants "released, spilled, and/or failed to properly control . . . gasoline containing MBTE, and/or clean-up spills and leaks of MTBE." Id. Here, Westport alleges the defendants "negligently, recklessly, and/or intentionally produced and marketed PCBs in a manner that caused PCBs to contaminate Plaintiffs' property." D. 1 ¶ 103. The Court is not aware of any precedential authority allowing claim of trespass against a lawful purchaser where, even as alleged, the entry onto the property was not accompanied by a negligent act as in Am. Glue & Resin; rather, PCBs entered as a result of the installation of certain building materials on Westport's property.

At the motion hearing, Westport explained that its claim falls into the Restatement definition of negligent trespass as "one who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter . . . cause[ing] harm." D. 40 at 16 (citing Restatement (Second) of Torts § 165 (1965)). Westport noted the that the level of PCBs detected in the air at one of its middle schools was over three times the limit set by the Environmental Protection Agency, and that Defendants "provided a material that they knew was going to be in the buildings, knew it would be released into the environment, and then the exposure levels that have resulted as to that have, indeed, caused a substantial harm." D. 40 at 16-17. The Court, while recognizing the potential harm of environmental contaminants, cannot say that adopting this interpretation of negligent trespass is appropriate when the strongest support for Westport's position is Am. Glue & Resin, in which the court noted "[t]he complaint reasonably infers that Air Products and/or Union had a license to enter American's property to complete the sale and delivery of chemicals," an entry by the

defendants. Am. Glue & Resin, 835 F. Supp. at 48. By Westport's own account, "Westport and the Westport Community Schools brought in products that contained PCBs." D. 30 at 13. That Defendants sold PCBs with the knowledge they would be used in building materials is not analogous to the entry required even for negligent trespass.

Accordingly, Defendants' motion to dismiss Westport's trespass claim (Count VI) is ALLOWED.

### C. Massachusetts Oil and Hazardous Material Release Prevention and Response Act (Count VII)

Westport brings its seventh claim under the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. L. c. 21E § 5(a)(3)-(5), providing for liability against:

> (3) any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material; (4) any person who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material; and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site . . .

D. 1 ¶ 106. Although the complaint quotes the language from these three categories in the relevant count, Westport does not allege specific actions relating to transport or arranging transport, and the complaint does not otherwise indicate that Defendants physically dumped or arranged to dump PCBs onto Westport's property. While Westport is correct that its "pleading burden does not require a series of numbered paragraphs providing the chemical process that details the fate and transport of the PCBs," id. at 18 n. 3, if attempting to establish liability under § 5(a)(3) or § 5(a)(4), most than mere recitation of the relevant language must be offered. Westport grounds its opposition to Defendant's motion in the broader provision, § 5(a)(5), D. 30

11

at 16, noting that Defendants were the only manufacturer of PCBs for decades, that they commercially sold PCBs for use in construction including in schools and that they were aware of PCB's toxicity and the potential for environmental release. Id. at 17-18.

"[T]o impose liability under [the 'otherwise caused' prong of] § 5(a)(5), a plaintiff first must establish both that the defendant caused the release and that the release caused the contamination." Commonwealth v. Boston Edison Co., 444 Mass. 324, 334 (2005). Here, Westport has alleged that Monsanto was the only manufacturer of PCBs to intentionally produce them for commercial use, that Westport purchased building materials containing PCBs and that dangerous levels of PCBs have been detected in its schools. D. 1 ¶¶ 21, 60, 80. Defendants rely on Griffith v. New England Tel. & Tel. Co., 414 Mass. 824 (1993) and Scott v. NG U.S. 1, Inc., 450 Mass. 760 (2008) for the proposition that they cannot be held liable because they are not prior owners, controllers or occupiers of Westport's property. D. 33 at 12.

In Griffith, the Massachusetts Supreme Judicial Court explained that § 5(a)(5), a section not present in the federally-analogous Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), "was added to establish liability over past owners or operators of oil-contaminated sites when they have 'caused' a release of oil from the site." Griffith, 414 Mass. at 830. In Scott, the court provided, "[t]he conduct giving rise to liability under G.L. c. 21E, § 5 (a) (5), is 'caus[ing]' or being 'legally responsible' for the release or threat of release of oil or hazardous material," but in the following sentence explained, "[u]nder § 5(a)(5), therefore, 'a past owner or operator of a site contaminated by oil can be held liable if that person 'caused' a release or threat of a release of oil from the site,' or is otherwise legally responsible for it." Scott, 450 Mass. at 765 (quoting Griffith, 414 Mass. at 830). In In re Methyl, 379 F. Supp. 2d at 413, the court refused to dismiss a § 5(a)(5) claim against gasoline suppliers, despite that "[t]o

date, the Massachusetts Supreme Judicial Court has only considered the notion of legal responsibility where the parties maintained a contractual or special relationship," because "during the course of transport, defendants may have caused the release, spill or leak of gasoline." In re Methyl, 379 F. Supp. 2d at 413. The district court in In re Methyl allowed the claim to proceed absent a special relationship based upon the "otherwise caused" language of § 5(a)(5), because of the potential spillage during transport. Shortly thereafter, in Boston Edison, the Supreme Judicial Court explained, the "standard of causation [under § 5 (a)(5)] is a higher standard of liability than that found under § 5(a)(2)-(4), and our cases suggest it requires more than a failure to prevent a release." Boston Edison Co., 444 Mass. at 334. The court cited Marenghi v. Mobil Oil Corp., 420 Mass. 371 (1995), in which the court held that a failure to prevent an oil tank leak, without more, did not establish causation under § 5(a)(5). Id.

Here, although the relevant count quotes § 5(a)(3)-(5), in its opposition Westport asks the Court to find a plausible basis for § 5(a)(5) liability based on the fact that "defendants produced and sold PCBs despite knowing that PCBs were uncontrollable pollutant[s] that were being released into the environment." D. 30 at 18 (citations to the complaint omitted). Westport has not alleged that Defendants caused the release aside from such manufacture and sale, nor has Westport alleged that Defendants transported PCBs or otherwise interacted with Westport's property aside from the language of § 5(a)(3)-(5) recited in the count. Although Westport correctly notes that the analogous CERCLA does not include the broad "otherwise caused" provision in § 5(a)(5), D. 30 at 16, the Court declines to conclude that the language encompasses liability based on the facts alleged in the complaint, particularly given the Supreme Judicial Court's guidance that § 5(a)(5) "was added to establish liability over past owners or operators of

13

oil-contaminated sites when they have 'caused' a release of oil from the site." Griffith, 414 Mass. at 830.

Accordingly, Defendants' motion to dismiss Westport's 21E claim, Count VII, is ALLOWED.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' partial motion to dismiss, D. 22.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge