UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| TOWN OF WESTPORT, and <br> WESTPORT COMMUNITY SCHOOLS, <br><br>     Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY, <br> SOLUTIA INC., and <br> PHARMACIA CORPORATION, <br><br>     Defendants. | C.A. No. 14-CV-12041 |

---

## DEFENDANTS' OPPOSITION TO WESTPORT'S MOTION TO COMPEL

COME NOW Monsanto Company, Solutia Inc., and Pharmacia Corporation ("Defendants") and respectfully submit their Opposition to Town of Westport and Westport Community Schools' ("Westport") Motion to Compel and accompanying Memorandum ("Memo."), (D. 62, 62-1).

## INTRODUCTION

Westport has spent more time and effort complaining about what it allegedly does not have than reviewing what it actually has. For example, Westport received a CD from Defendants on September 14, 2015 containing thousands of pages of documents (Defendants' second such production). *See* Buck Decl. at ¶15. Westport filed its Motion to Compel the very next day, September 15. Also that day, Westport sent a letter to Defendants requesting a deposition transcript that had been produced to them months ago and a transcript that was on the CD received the previous day.[1]  *See* id. at ¶17.  Then on September 16, the day after it filed its Motion

---

[1] Westport requested W. Papageorge's 05/17/07 testimony. This testimony and exhibits, exceeding 1,000 pages, were produced and specifically identified in Pharmacia's original

SLC-7683365-2

to Compel, Westport's counsel emailed defense counsel saying she could not access the documents she had received on CD on September 14.  *Id.* at ¶18.[2]  Thus, without even looking at a single page of the documents that Defendants provided on September 14, and overlooking deposition transcripts already provided two months earlier on July 10, Westport filed its Motion to Compel claiming insufficient discovery responses and document production by Defendants.

Ironically, Westport itself has responded to discovery requests by way of overbreadth objections and advising Defendants that it contemplates a "rolling" document production.  *See* Westport's Requests for Production, Ex 1. Defendants are awaiting receipt and review of Westport's rolling production, giving opposing counsel the benefit of the doubt and adequate time for meaningful meet and confers, before jumping the gun and wasting the Court's time on premature discovery motions.  A clear pattern has developed with Westport: it leaps before looking, indicating its desired approach to this case is an embroiled discovery battle aimed at forcing Defendants into a lengthy and costly fishing expedition wildly beyond the scope of its allegations and causes of action in an effort to overcome the factual and legal weaknesses of its case.[3]  These tactics should not be permitted.

Westport's Motion is unfounded for other reasons as well.  What Westport professes to be "narrowly tailored discovery" or "very specific requests" is anything but.  For example, Westport seeks "cloned" discovery from virtually all prior PCB litigation.  It is well-settled that "cloned"

---

discovery responses served over two months ago on July 10, 2015. *See* Request for Production No. 1. (D. 62, 62-1, Ex. D to Evangelisti Aff.).

[2]  Defendants' counsel promptly assisted Westport's counsel in accessing the documents. *See* Buck Decl. at ¶18.

[3] As Westport has noted, this case is "strikingly similar" to the *Town of Lexington* matter, Case. No. 1:12-cv-11645-DJC, in which this Court recently granted summary judgment in favor of Pharmacia on **all counts**, including two of the three counts brought by Westport in this action. 9/23/15 Order Granting Summary Judgement, Ex. 2.

discovery, without any kind of limitation or connection to the allegations in this case, is not proper. *See, e.g. Capital Ventures Intern. V. J.P. Morgan Mortg. Acquisition Corp.*, Civil Action No. 12-10085-RWZ, 2014 WL 1431124 (D.Mass, April 14, 2014) ("*Capital Ventures*"). It is not reasonably calculated to lead to the discovery of admissible evidence and puts an undue burden on Defendants. Westport's own cited case law states as much.

Moreover, Westport's Motion is largely moot. To date, Defendants have provided more than 126,000 pages of documents. And document production is still ongoing. But Defendants do not expect Westport to be satisfied, given their tactic of involving the Court before reviewing all of Defendants' production or giving Defendants a meaningful chance to review and respond to Westport's complaints.

Defendants have and will continue to make every effort to reasonably respond to Westport's overbroad discovery demands and to negotiate responsible compromises between the parties. In the interim, Defendants request that this Court place reasonable limitations on Westport's discovery demands, so this case can proceed in an efficient, timely manner, ensuring that any burden on Defendants in engaging in the expansive discovery demanded by Westport is proportionate to any potential speculative benefit to Westport, and with cost-shifting in Defendants' favor as necessary.

## **ARGUMENT**

### A.   **Westport's Requests Cast Such a Wide Net that They Are Not Reasonably Calculated to the Lead to the Discovery of Relevant Information.**

While the scope is generally broad, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (internal quotations and citations omitted). Westport seeks property /remediation damages based on PCBs detected in building caulk in a single school within its district. Yet their discovery seeks

information on a much broader scale.

1.    **Westport's requests for "cloned" discovery of all prior PCB-related cases is improper.**

Westport's Interrogatories Nos. 1-4 and Requests for Production Nos. 1-4 impermissibly seek "cloned" discovery (*e.g.*, *Capital Ventures, supra*), the sweeping scope of which cannot be understated.  Westport's requests are not properly limited by type of claim or similar litigation. Instead, Westport seeks the identity of every lawsuit against Defendants in which PCBs were alleged to be defective and/or to have caused harm to human health or the environment, as well as every deposition taken in each such case, Defendants' document production from each such case, and then all other sworn testimony from any employee of Defendants in any other matter where the subject matter was PCBs or products containing PCBs.  Defendants have agreed to provide information concerning other cases relating to PCBs in schools (six cases have been identified, not including Westport) and have further expanded the scope of other PCB litigation identified to include cases alleging property damage due to PCBs in commercial buildings, incorporated into building products manufactured by others, including caulk, paint and lighting ballasts.

But Westport is not satisfied with Defendants' proposed reasonable compromise, instead demanding burdensome and irrelevant information concerning personal injury claims, including from capacitor and transformer workers at G.E. and Westinghouse,[4] medical monitoring claims, CERCLA or other environment regulatory based claims, and other litigation not remotely similar to the current litigation.

---

[4] Westport's counsel at Weitz and Luxenberg in fact prosecuted against Pharmacia several thousand personal injury claims for workers from the General Electric Schenectady, New York Plant that were dismissed by the Federal District Court for the Southern District of New York in 2009 (New York G.E. Worker cases). Plaintiffs' counsel still have discovery from those dissimilar cases.  *See* Buck Decl. at ¶20.

The court in *United Oil Co. v. Parts Associates, Inc.*, 227 F.R.D. 404 (D. Md. 2005) – cited by Westport – reasoned that the "widely-accepted view" is to permit "discovery of other litigation where it involves (1) the **same or similar claims** arising from (2) the **same or similar products** at issue." *Id.* at 410 (citing party's brief) (emphasis added). The *United Oil* case involved claims of liver damage. The court limited production of other lawsuits to those involving claims of liver damage, since "[c]laims, complaints, and litigation about other dangers and the sufficiency of the product warning as to those dangers **are plainly not relevant** . . ." *Id.* (emphasis added). Here, the claims involve PCBs in caulk in schools, but Westport's discovery seeks information and materials from virtually all PCB-related litigation from all time, regardless of the type of case or product involved.

The law requires reasonable limits to cloned discovery. *Capital Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.*, Civil Action No. 12-10085—RWZ, 2014 WL 1431124 (D.Mass. April 14, 2014) is directly on point. The plaintiff sought broad discovery of "all transcripts" of employees relating in any way to the securities at issue:

> The request is overbroad and not reasonably calculated to lead to relevant information. Plaintiff cites several instances where courts have ordered production of testimony from other litigations, but those situations involved materials from a **limited number of similar actions** or from specifically identified witnesses. **In contrast, plaintiff indiscriminately pursues wholesale production of all testimonial materials from all employees in all cases** or investigations that have any relation at all to RMBS, **regardless of their connection to** the four securitizations or specific **claims at issue here.**

Id. at *1 (emphasis added). Westport cites the same four cases as the plaintiff in *Capital Ventures*.[5] They are no more help to Westport here as they were to plaintiff in that case, where

---

[5]  *Waters v. Earthlink, Inc.,* 2004 WL 6000237, at *3 (D. Mass. Dec. 1, 2004) (allowing production from a single case, "[s]ince this testimony relates to a case involving similar claims and facts to the case at bar"); *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981) (ordering production of transcripts in a single prior case which involved "substantially similar allegations . . . [and] overlapping periods of time"); *Lillibridge v. Nautilus*

the Court determined that plaintiff had not shown "sufficient similarity between the current action and dozens of other cases or investigations to justify the expansive discovery it seeks."  *Id.* Defendants' responses to these interrogatories and requests for production have been proper and should require no further supplementation or revision.

**2. Westport's requests are not narrowly tailored and are therefore improper but Defendants' production of OCR'd documents is reasonable and satisfies its obligations.**

The Court can limit discovery if it determines that the requested discovery is "(4) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.Civ.P. 26(b)(2)(i)-(iii). "Generally, a discovery request is considered overly broad or unduly burdensome on its face if it "(1) uses an omnibus term ... and (2) applies to a general category or group of documents or a broad range of information."  *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) (internal quotations omitted).

Westport complains that Defendants provided only "representative" documents and/or have not confirmed that all responsive documents have been produced.  This is the result of Westport's overbroad, vague requests.  For instance, Westport sought "all internal reports relating to PCBs."  This is not defined, limited, or tailored in any manner.  The only reasonable response for Defendants is to object to the overbroad scope of such request but then conduct searches and provide relevant documents in light of the fairly specific allegations in this case (seeking property damages and/or remediation costs associated with PCBs found in building caulk in one of

*Ins. Co.,* 2013 WL 1896825, at *6-7 (D.S.D. May 3, 2013) (ordering insurer in case alleging bad faith to produce evidence of prior litigation limited to prior bad faith cases"); *Bennett v. Segway, Inc.,* 2011 WL 4965179, at *3 (W.D.N.C. Oct. 19, 2011) (ordering production of testimony from seven specific employees relating to "any personal injury action stemming from the operation or use of a Segway").

Westport's schools).[6]  Thus, Defendants provided Westport with large sets of OCR'd documents in searchable form to allow Westport to search for any and all "reports" that it desires.

As previously explained to Westport, beginning in the early 1970's and continuing through the early 1980's (PCB manufacture and sales ceased in 1977), Defendants' counsel collected and have preserved ever since in a PCB litigation archive then-existing relevant PCB documents.  Defendants have produced to Westport's counsel the deposition of a former in-house counsel concerning the creation and preservation of the archive.[7]  There is little more that Defendants can do (or are required to do) with respect to information and materials about the collection, preservation and maintenance of the PCB historical archive.

From an historical archive for a business that has not existed for 38 years, there are a limited number of ways to respond to discovery. The first and most traditional way – understanding the archive of documents stems from an age when e-mail and Microsoft Word did

---

[6]  As the Court is aware from the Lexington litigation, Westport is under no legal obligation to remediate or remove the caulk in its school.  In fact, the EPA recently stated that what it previously labeled as "Recommended Public Health Levels for PCBs in School Indoor Air" is more appropriately titled "Exposure Levels for Evaluating PCBs in School Indoor Air."  7/28/15 EPA Guidance, Ex. 3   Even if indoor air tests reveal PCBs above 50 ppm, the EPA states this is not indicative of any public health threat and does not necessarily require removal of the caulk. *Id.* Instead, the EPA recommends implementation of "best management practices" to control PCB levels in indoor air.  *Id.* Only if after implementation of such practices do indoor air levels repeatedly persist above the EPA's "evaluation levels" does the EPA recommend that a school follow up with its EPA Regional PCB Coordinator to discuss next steps, which may or may not involve removal of PCB-containing products from the building. *Id.*  Such legal and factual weaknesses of Plaintiffs' case must be considered when weighing the burden of voluminous discovery to Defendants against the benefit to Westport. *Transamerica Life Ins.*, 274 F.R.D. at 609.

[7]  In addition, Defendants produced document retention policies spanning over five decades. These documents were delivered to Westport the day before it filed its Motion to Compel and served a 30(b)(6) notice seeking information on these same topics.  Since Westport's counsel emailed defense counsel concerning their inability to open the password-protected CD containing these documents, Westport had not even accessed (let alone read) the deposition or retention policies before taking this issue up with this Court as well serving an unnecessary, ultimately harassing, 30(b)(6) notice (to which Defendants will submit appropriate objections).

not exist – is to locate documents specifically responsive to targeted discovery requests and to bates label and produce them.  The second way is to create sets of documents responsive to common repetitive broad requests (*e.g.*, provide documents relating to PCBs and health, safety and the environment (the MONS set); or *e.g.*, provide PCB warning letters to customers (the MCL warning letter set), and to produce those as searchable OCR'd available sets, as has been done here.  The final way, when plaintiffs' counsel say the equivalent of "we don't trust you," is to invite inspection of the documents themselves, subject to necessary claw-back and/or Rule 502 agreements for privilege, and the provision to plaintiffs' counsel of indices of the documents when available.  Defendants responded via the first two methods, given the relatively narrow scope of this case.

In an effort to compromise, Defendants have now offered the third method.  Weitz and Luxenberg were plaintiffs' counsel of record in the G.E. New York Worker cases, referenced above.  They presumably still have Defendants' discovery responses and document production from that case. There, when plaintiffs' counsel asked targeted questions about specific documents, Defendants responded in a very precise and focused fashion, listing specific bates ranges in response.

But when Plaintiffs in the GE New York Worker cases asked for the "over 800,000 pages of PCB-related documents located in the repository at the offices of defendant's law firm in North Carolina and over 150,000 pages of PCB-related documents located at Defendant Headquarters in St. Louis," Defendants invited Plaintiffs' counsel Weitz and Luxenberg (the same as here) to review the massive DSW portion of the archive and sent to plaintiffs' counsel in November 2008 an index of that collection, (Nov. 7, 2008 letter from defense counsel to William A. Walsh of Weitz & Luxenberg, Ex. H to Buck Decl.). Plaintiffs' counsel in the G.E. Worker Cases chose not

8

to review these documents before the cases were dismissed, but were invited to do so, with an index provided.   They are invited to do so again (even though this case has nothing to do with personal injuries) subject to execution of appropriate claw back and/or Rule 502 agreements. This should absolutely satisfy, in fact, exceed Defendants' obligations under the federal rules in terms of allowable discovery.

**B.    Westport's Charge of Spoliation of Decades Old Documents that May or May Not Have Ever Existed is Spurious**

Westport claims that, because Defendants were unable to identify documents within its archive for a handful of specific requests, it should be subject to sanctions based on spoliation. *See* D. 62, 62-1 at 9-10.  This baseless charge is absurd.   First, Westport cites no case where a court has ordered sanctions when a party in a case filed in 2014 has made efforts at locating, collecting, preserving and producing documents from as long as 83 years ago about a business that has not been in existence for 38 years.[8]  Second, Westport's speculation that "there may have been relevant documents destroyed" is based on several specific requests for documents which would have ever existed, **if at all**, many decades ago.

For example, Westport's Requests No. 17 requests "[a]ll documents consisting of, referring to or relating to communications with Cecil Drinker or his staff by you or anyone on your behalf relating to PCBs."   Interrogatory No 17 (D. 62, 62-1, Ex. D to Evangelisti Aff.). Since Dr. Drinker's reports related to PCBs were created in the 1930's and since he died in 1956, any communications with Dr. Drinker would have pre-dated 1956.  (His reports from the 1930's have been produced; there is no extant correspondence about them.)  Plaintiffs stretch credibility

---

[8] Westport's reliance on *Townsend v. Am. Insulated Panel Co., Inc.,* 174 F.R.D. 1 (D.Mass. 1997) is misplaced.  In *Townsend*, the court **denied** imposing sanctions on a plaintiff whose employer had dismantled relevant evidence, as "the duty [to preserve] does not extend to evidence which is not in the litigant's possession or custody and over which the litigant has no control."  *Id*. at 5.

by arguing that Defendants' inability to locate in 2015 communications with Dr. Drinker that

would have occurred (if at all) in the 1930's warrants a finding of spoliation.  As the First Circuit

has aptly recognized:

> [B]usinesses discard materials all the time.  An inference of spoliation depends on underlying facts that would permit a fact-finder to conclude that those who destroyed the materials did so in bad faith or ... consciousness of a weak case. . . Perhaps unwisely, the group discarded separate handwritten notes . . . There is no indication that anything was destroyed in order to prevent its use in litigation or that anything lost contained information helpful to [plaintiff].

*Joler v. Scott Paper Co.,* 65 F.3d 160, 1995 WL 520723, *3 (1st Cir.1995) (internal quotations

and citation omitted); *see also United States v. Laurent,* 607 F.3d 895, 903 (1st Cir.2010)

(affirming no adverse inference where "nothing suggested that the police had erased this

particular tape for any reason beyond the passage of time.").  *See also Turner v. Public Service

Co. of Colorado*, 563 F.3d 1136, 1150 (2009) (affirming decision not to sanction where employer

lost interview notes but "[t]he record as a whole," including defendant's production of "numerous

documents," did not support that the defendant acted in bad faith, nor that plaintiff was

prejudiced).  Defendants have not spoliated evidence and nothing about their discovery responses

warrants any such suggestion.

## CONCLUSION

Defendants have responded with specific bates ranges to the targeted requests sent by

plaintiffs; they have advised when the documents do not exist (*i.e.* no correspondence with Dr.

Cecil Drinker in the 1930's or otherwise until his death in 1956 was found); they have produced

OCR'd searchable sets of commonly requested documents, *e.g.* re PCBs and health, safety and the

environment (MONS set), and plaintiffs' counsel are welcome to review other parts of the

archive, on mutually agreeable dates, subject to execution of appropriate claw-back agreements.

There is little else that Defendants can do or offer, and there certainly is nothing else under the

rules of civil procedure required of Defendants.   Accordingly, Defendants respectfully request that Plaintiffs' Motion to Compel be Denied.

**MONSANTO COMPANY**,
**SOLUTIA INC., and**
**PHARMACIA CORPORATION**

By its attorneys,

CAMPBELL CAMPBELL EDWARDS &
CONROY, P.C.

/s/ Richard L. Campbell
Richard L. Campbell (BBO # 663934)
Brandon L. Arber (BBO # 676425)
Diana A. Chang (BBO # 682317)
Sean M. Hickey (BBO # 690865)
One Constitution Center, 3rd Floor
Boston, MA 02129
(617) 241-3000
rlcampbell@campbell-trial-lawyers.com
barber@campbell-trial-lawyers.com
dchang@campbell-trial-lawyers.com
shickey@campbell-trial-lawyers.com

-and-

HUSCH BLACKWELL LLP
Carol A. Rutter (pro hac vice)
Robyn D. Buck (pro hac vice)
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
Carol.Rutter@huschblackwell.com
Robyn.Buck@huschblackwell.com

SLC-7683365-2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon Plaintiff's counsel via electronic mail and/or U.S. Mail on this 29th day of September, 2015.

Richard M. Sandman
RODMAN, RODMAN & SANDMAN, P.C.
442 Main Street, Suite 300
Malden, MA 02148-5122
Telephone: (781) 322-3720

Scott Summy (pro hac vice)
Carla Burke (pro hac vice)
Celeste A. Evangelisti (pro hac vice)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219-4281
Telephone: (214) 521-3605

Robert J. Gordon (pro hac vice)
Robin L. Greenwald (pro hac vice)
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5505

/s/ Richard L. Campbell

SLC-7683365-2