# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF WESTPORT and WESTPORT COMMUNITY SCHOOLS, )<br><br>Plaintiffs, )<br><br>v. )<br><br>MONSANTO COMPANY, SOLUTIA, INC. and PHARMACIA CORPORATION, )<br><br>Defendants. ) | Civil Action No. 14-CV-12041<br><br>Leave to file granted on March 1, 2017 |

### DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT ROBERT F. HERRICK, PH. D.

WHITE AND WILLIAMS LLP

101 Arch Street, Suite 1930
Boston, MA 02110-1103
(617) 748-5200

Attorneys for Defendants Monsanto Company, Solutia, Inc. and Pharmacia Corporation

Plaintiffs proffer Robert F. Herrick, Ph.D., an industrial hygienist, to opine that Westport's decision to remove PCBs was "reasonable" because PCBs posed a "health threat" at Westport Middle School ("WMS"). Pharmacia seeks to exclude Herrick because (1) his opinion does not "fit" any element of Plaintiffs' burden of proof; and (2) his opinion that PCBs posed a "health threat" is scientifically unreliable because he relies on irrelevant data and unsound methodology.

In response to Pharmacia's Motion, Plaintiffs misconstrue their burden of proof to create an unrecognized "reasonable decision-making" theory of property damage. As for Herrick's opinion that PCBs at WMS posed a "health threat," Plaintiffs confirm that Herrick will not testify that PCBs at WMS rendered the building unsafe for human occupancy as required to establish compensable injury. Without legal, factual, or scientific basis, Plaintiffs contend that the mere presence of PCBs, "below the level shown to cause disease," poses an additive risk combined with environmental exposures. Plaintiffs disregard Herrick's reliance on dissimilar exposure conditions, his misinterpretation of EPA guidance documents, and his admission that he performed a one-sided analysis of the literature about PCBs and human disease. Herrick should be precluded under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

## I.   Herrick's "Reasonableness" Opinion Lacks the Required "Fit"

Plaintiffs concede that Herrick will not testify "whether the remediation at WMS was correctly carried out or whether the cost of remediation was reasonable."[1] Instead, Plaintiffs proffer Herrick on a non-existent issue: the "reasonableness" of Plaintiffs' *decision* to remove PCBs from WMS. In so doing, Plaintiffs incorrectly conflate "damages" concepts with their burden of proving a compensable "injury." Injury and damages are two separate and distinct

---

[1] See Westport's Opposition Memorandum ("Opp. Mem.") at 7.

1

18526857v.1

elements of proof.  On the one hand, injury is the legal harm for which recovery is sought; on the other hand, damages constitute the measure of recovery.[2]  To establish a compensable injury, Plaintiffs must prove that PCBs rendered the WMS unsafe for human occupancy.  To establish damages, Plaintiffs must prove the reasonable necessity of Plaintiffs' remediation actions in light of the injury inflicted by PCBs and the reasonableness of the costs.  *Trinity Church v. John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 49 (1987).  The "reasonable necessity" of Plaintiffs' *remediation actions* is relevant to proof of damages, but not to whether Plaintiffs sustained a compensable injury.  To the extent, if any, that Westport proffers Herrick's "reasonableness judgment" on the issue of damages, it does not "fit" the "reasonable necessity" requirement of *Trinity Church*.[3]  Herrick's opinion on the mere "reasonableness" of Westport's decision to remediate has no bearing on Westport's burden of proving damages.

## II.     Herrick's "Health Threat" Opinion Lacks the Required "Fit"

To avoid proof of a compensable injury, Westport incorrectly claims that the mere presence of PCBs at any level constitutes harm and, alternatively, that PCBs "below the level shown to cause disease" constitute a substantial factor combined with environmental exposures in causing injury.[4]  Herrick's report asserts that PCBs are ubiquitous in the environment.[5]  Thus, under Westport's formulation, all property is injured, and the injury element of Plaintiffs' burden of proof has been defined out of existence.  Such a position, which would expose Pharmacia to

---

[2]*Turcotte v. De Witt*, 333 Mass. 389, 391 (1955).
[3]"Reasonable" and "necessary" also have different meanings.  The term "reasonable" means "not excessive;" whereas, the definition of "necessary" is "absolutely needed" or "required."  Merriam-Webster.com, 2017, https://www.merriam-webster.com (2/6/17) attached as Exhibit "K."
[4]Opp. Mem. at 10-11.  Westport has not proffered any expert who has opined that the PCB exposures at WMS, when coupled with other environmental PCB exposures, cause human disease.
[5]Herrick's Report at p. 4 attached to  Defendants' opening Memorandum  as Exhibit " A."

2

unlimited liability, is contrary to Massachusetts law and public policy.[6] Westport relies on inapposite cases involving: (1) physical injury that was either conceded, assumed, or not alleged;[7] (2) the principle of concurrent causation in which each cause alone can cause the injury;[8] and (3) product identification principles unique to asbestos litigation.[9] These cases have nothing whatsoever to do with Westport's burden of proof.[10] Because Herrick's opinion that PCBs posed a "health threat" falls short of establishing that PCBs rendered the WMS unsafe for human occupancy, it lacks the necessary fit for its admissibility under *Daubert*.

### III. Herrick's "Health Threat" Opinion is Unfounded

Herrick conceded that there are ***no*** scientific studies that conclude that PCBs volatizing

---

[6] *See, e.g., Berish v. Bornstein*, 2006 Mass. Super. Lexis 330 (May 22, 2006), *aff'd*, 2007 Mass. App. Unpub. Lexis 626 (Mass. App. Ct. Dec. 28, 2007) (Rule 1:28 memorandum) (rejecting property damage claim for mold due to lack of proof of harmful levels of mold growth), *Remy v. MacDonald*, 440 Mass. 675, 677 (2004) (refusing to impose a legal duty of care in negligence on a mother to her unborn child because it "would present an almost unlimited number of circumstances that would likely give rise to litigation."), *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass 710, 715 (2014) (refusing to expand an employer's liability "to prevent the future behavior of a former employee, with respect to unknown customers and clients of unknown future employers" because "the geographic and temporal breadth of the duty the plaintiffs seek to impose reaches too far, and potentially would expose the employer to liability to an essentially limitless class of unknown parties.").

[7] *See, e.g.*, *Guaranty-First Trust Co.*, 416 Mass. 332 (1993) (addressing a certified issue limited to the measure of damages under the Massachusetts Oil and Hazardous Material Release Prevention Act); *McDonough v. Whalen*, 365 Mass. 506 (1974) (finding homeowner suffered physical damage to his property in the form of sewage flowing over his land from a defective septic system); *Garweth Corp. v. Boston Edison Co.*, 415 Mass. 303 (1993) (holding that a contractor was not entitled to recover for business losses from an oil spill solely on his customer's property).

[8] *See, e.g.*, *Payton v. Abbott Labs.*, 780 F.2d 147 (1st Cir. 1985) (relating to joint and several liability among concurrent causes each of which alone could have caused harm); Mass. Super. Ct. Civ. Prac. Jury Instrs. §11.2.9(b) (relating to concurrent causation among causes which each alone could have caused the harm).

[9] *See, e.g.*, *Morin v. Autozone Northeast, Inc.*, 79 Mass. App. Ct. 39 (2011) (relating to product identification for workplace exposure to asbestos in mesothelioma case).

[10] Westport misstates the holding in *Berish v. Bornstein*, 2006 Mass. Super. Lexis 330, *64 (May 22, 2006), *aff'd*, 2007 Mass. App. Unpub. Lexis 626 (Mass. App. Ct. Dec. 28, 2007), where the Court rejected a property damage claim for mold finding that "***the mold growth was insignificant as it related to the health and safety of the occupants*** and was not the cause of any sickness by those who occupied any of the units within the condominium." *Id.* *15 (emphasis added). Westport also misapprehends the holding in *Gleason v. Town of Bolton*, 2002 Mass. Super. Lexis 208 (Mass. Super. Ct. May 23, 2002), where the Court rejected a property damage claim for MTBE contamination, not because the plaintiff was a leaseholder, but because "***there is no evidence of physical harm to the plaintiff's property or of personal injury***. . . . *Id.* *8. In reaching its decision, the Court distinguished *Scavone v. Massachusetts Turnpike Authy.,* 688 N.E.2d 475 (Mass. App. Ct. 1997), on the basis that, "[i]n contrast to *Scavone*, in this case, the question of contamination is not at issue. Rather, the issue is whether the plaintiff suffered any damage as a result of the contamination." *Gleason* at *8.

3

from buildings cause human disease.[11] He admitted there are no studies to verify the hypothesis that PCB levels found at WMS cause human disease.[12] Absent proof that PCBs at the levels found in the WMS causes human disease, Herrick's so-called "health threat" is a mere hypothetical hazard in search of a scientific underpinning.

Lacking any scientific studies to support his hypothesis, Westport inappropriately invokes EPA guidelines and papers authored by such organizations as IARC and the ATSDR. However, recognizing the protective mission of such organizations, the numerous, conservative health-protective assumptions and the lower burden of proof employed by them in assessing risk, Courts have long held that experts cannot rely upon regulatory guidelines, risk assessments, and hazard identifications to meet their *Daubert* burden.[13] IARC limits its carcinogenicity evaluations to a "hazard assessment," which is only the first step of the risk assessment methodology applied by the EPA.[14] In other words, it is even further removed from the appropriate *Daubert* standard.

Westport and Herrick specifically invoke the EPA's school air PCB guidelines, suggesting that air levels in excess of a measurement cited by the EPA means a building is

---

[11]*See* Deposition of Robert F. Herrick, Ph.D at 151:24-152:5, excerpts attached as Exhibit "L."
[12]*Id*. at 152:6-13.
[13]*See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1249-50 (11th Cir. 2005). As the Eleventh Circuit explained, "the procedures commonly used in 'risk assessment' for the purpose of establishing public health guidelines that represent 'acceptable' exposure levels for large populations are often … of marginal relevance in estimating 'causation.'" *Id.* at 1249 (quoting David Eaton, *Scientific Judgment and Toxic Torts – A Primer in Toxicology for Judges and Lawyers*, 12:1 J.L. & Pol'y 5 (2003)). "Because a number of protective, often 'worst case' assumptions . . . are made in estimating allowable exposures for large populations, these criteria and the resulting regulatory levels . . .generally overestimate potential toxicity levels for nearly all individuals." *Id.*; *see also Fed. Trade Comm'n v. Wellness Support Network, Inc.*, No. 10- CV-04879-JCS, 2013 WL 5513332, at *10 (N.D. Cal. Oct. 4, 2013) (finding expert testimony based on regulatory requirements rather than scientific principles does not satisfy *Daubert*). *See also*, *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002); *accord Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 991 (8th Cir. 2001); *Hollander v. Sandoz Pharm. Corp.*, 95 F. Supp. 2d 1230, 1234 n. 9 (W.D. Okla. 2000), *aff'd in part and remanded,* 289 F.3d 1193 (10th Cir. 2002); *Hollander v. Sandoz Pharm. Corp*., 289 F.3d 1193, 1215 (10th Cir. 2002).
[14]IARC, *IARC Monographs on the Evaluation of Carcinogenic Risks to Humans Preamble*, A.2 (Jan. 2006), http://monographs.iarc.fr/ENG/Preamble/currenta2objective0706.php. attached as Exhibit "M."

unsafe. This will come as a surprise to the EPA, which has stated the exact opposite: that the guidance air levels "are not meant to be interpreted or applied as a 'bright line' or 'not-to-exceed' criteria."[15] In short, Westport conflates what Herrick does as an industrial hygienist with its burden of proof. Protective guidelines based on conservative assumptions simply cannot be used to prove injury in cases like this.

## IV. Herrick Fails to Use a Recognized Scientific Methodology

Courts have recognized that, in assessing scientific literature to determine whether a substance causes human disease, it is appropriate to follow a "weight of the evidence" methodology.[16] Herrick admittedly used a one-sided methodology,[17] by which he ignored the hundreds of peer-reviewed PCB studies and tests that found no associations, found statistically insignificant associations, or reported results that were inconsistent with prior positive studies that he relies upon in his Report.[18] Herrick's flawed methodology provides no basis for an expert opinion.

## **CONCLUSION**

Based on the reasons set forth in Defendants' Motion and this Reply, Defendants respectfully request this Honorable Court to exclude the testimony of Robert F. Herrick.

---

[15] *See*, PCBs in Building Materials – Questions and Answers – July 28, 2015 attached as Exhibit "N."
[16] *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 474 (1st Cir. 2016)
[17] Herrick Dep. at. 201:21-202:6 attached as Exhibit "L." Herrick lifted much of the purported health effects of PCBs both from a review paper written by someone else and from an advocacy paper written by the New York Lawyers for the Public Interest. *See Id.* at 189:13-190:9, 197:7-16, 214:13-215:10, 217:22-218:21.
[18] *See* Olson Dep. at 306, 313-14, 317-20, 322, 342 (questioning of Plaintiffs' expert about PCB literature that contradicts Plaintiffs' experts' opinions on health effects) excerpts attached as Exhibit "O."

Dated: March 1, 2017            Respectfully submitted,

WHITE AND WILLIAMS LLP

  /s/ Richard L. Campbell
Richard L. Campbell (BBO # 663934)
Brandon L. Arber (BBO # 676425)
Diana A. Chang (BBO # 682317)
Thomas M. Goutman (*pro hac vice*)
David S. Haase (*pro hac vice*)
White and Williams LLP
101 Arch Street, Suite 1930
Boston, MA 02110-1103
(617) 748-5200
Campbellrl@whiteandwilliams.com
Arberb@whiteandwilliams.com
Changd@whiteandwilliams.com
Goutmant@whiteandwilliams.com
Haased@whiteandwilliams.com

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record via the ECF system on March 1, 2017.

/s/ Richard L. Campbell

18526857v.1